671 P.2d 410

**JAMES P. PAUL WATER COMPANY,
an Arizona corporation,
Plaintiff-Appellant,**

v.

**ARIZONA CORPORATION COMMIS-
SION, an Administrative Agency of the
State of Arizona, Defendant-Appellee,**

and

**Pinnacle Paradise Water Company,
Intervenor-Appellee.**

**No. 1 CA–CIV 5240.**

Court of Appeals of Arizona,
Division 1, Department B.

Oct. 12, 1982.

Rehearing Denied Jan. 5, 1983.

Review Granted Feb. 8, 1983.

Burch & Cracchiolo, P.A. by Arda S.
Rutherford, Frank Haze Burch, Phoenix,
for plaintiff-appellant.

Robert K. Corbin, Atty. Gen. by Thomas
Prose, Lynwood J. Evans, Asst. Attys. Gen.,
Phoenix, for defendant-appellee.

Wright & Cluff by Lawrence C. Wright, David H. Cluff, Mesa, for intervenor-appellee.

## OPINION

JACOBSON, Presiding Judge.

Under what circumstances may the Arizona Corporation Commission delete a portion of the certificated area held by a public service corporation? This is the narrow issue presented by this appeal.

Appellant, the James P. Paul Water Company (Paul) is the holder of a certificate of convenience and necessity to supply domestic water within a certificated area which includes approximately 240 acres situated in the area of Pinnacle Peak Road and Hayden Road in Maricopa County, Arizona. At the time Paul obtained its certificate and at the time of hearing, this area was undeveloped.

On August 31, 1976, appellee-intervenor, Pinnacle Paradise Water Company (Pinnacle), which holds a certificate of convenience to supply domestic water to an area adjoining the 240 acres in question (hereinafter referred to as the subject property), filed a petition with the Arizona Corporation Commission seeking to delete the subject property from the certificated area served by Paul and add the subject property to the certificated area of Pinnacle.

These petitions gave rise to an order to show cause issued to Paul, requiring Paul to appear and show cause why the requested deletion should not occur. Hearings were held before the Commission on December 9, 1976, which resulted in a majority opinion and order deleting the subject property from Paul's certificate of convenience and necessity.

Following the denial of a motion for rehearing, Paul filed a complaint in the Superior Court of Maricopa County on April 4, 1977, seeking to set aside the Commission's order. Pinnacle was allowed to intervene in that action and is the principal litigant in these proceedings. The superior court on October 9, 1979, entered judgment upholding the Commission's order and Paul has appealed.

The facts necessary to dispose of the legal issues presented are not in material dispute. Paul was certified to serve the disputed area in 1969 or 1970. At the time of the hearing, Paul was supplying water to the Rawhide Complex, several households in the area and two riding stables. Water for this purpose was supplied from a relatively small well, in which Paul had installed 8″ pipes in anticipation of expansion to serve the entire certificated area. Paul has the necessary financial resources for expansion into the subject property and has stood ready, willing and able to service the area upon demand.

Jerry Nelson is the sole owner of Pinnacle and a 50% owner in a joint venture known as North Valley Investors, which has extensive plans to develop the subject property. These include developing residential homes and a resort. As a result of this projected development, Pinnacle increased its water service capacity. Thus, the Commission was able to find that Pinnacle had "facilities and water plant highly developed in an area contiguous to the area in question"; "there is sufficient water from the present facilities of [Pinnacle] to service the present certificated area of Pinnacle Paradise as well as the area presently in question"; and that "the facilities of [Pinnacle] could be extended into the area in question at a relatively low cost."

In contrast the Commission found that "the well presently operated by [Paul] has insufficient water supply to service the area in question"; and the Commission was "not in any way convinced that the facilities of [Paul] could be extended at a reasonable cost, nor that service could be provided to the area in question by [Paul], except upon the building of an entirely new system."

It appears that prior to Pinnacle's petition to delete, no demand had been made upon Paul to supply service to the subject property. Approximately one month prior to the hearing, North Valley Investors informed Paul of its anticipated water needs. A request by Paul for engineering plans and specifications to verify these needs apparently went unheeded.

As previously indicated, Paul presented evidence that it was financially capable of providing the needed service to the subject property and was ready, willing and able to so provide this service.

It is Paul's basic position on appeal that being a holder of a certificate of convenience and necessity for the subject property, the subject property could not be deleted from its franchise area absent a finding that Paul was either unwilling or unable to provide the franchise service required. Accordingly, Paul contends that since no such finding was made, or was capable of being made under the evidence, the Commission's order of deletion is unlawful.

Pinnacle on the other hand contends that the Commission has lawful authority to delete an area from a certificate of convenience and necessity any time the Commission finds that the "public interest" so requires. Pinnacle then argues that the "public interest" would best be served by having it, with its present capacity in place, provide that service.

These contrasting contentions put in sharp focus the policy considerations underlying the rights flowing from the issuance of a certificate of convenience and necessity by the Corporation Commission.

In order to isolate these policy considerations, a brief historical review of the development of the law in this area is in order.

We start with the major policy decision enunciated in *Corporation Commission v. Peoples Freight Line, Inc.*, 41 Ariz. 158, 16 P.2d 420 (1932), that the issuance of certificates of convenience and necessity under the statutory system adopted in Arizona gave the certificate holder a monopoly (regulated by the Commission as to rates, etc.) to supply the service within the certificated area. Tangentially to the protection of this monopoly, the Corporation Commission lacked lawful authority to allow another private public service company to provide competing services in that certificated area, without a showing that the service provided by the certificate holder was not ample in quantity, unsatisfactory in character, or unreasonable in price.

In order to give effect to this policy, the Commission is statutorily required in the first instance to investigate all applicants for certification, *see*, A.R.S. §§ 40–281 to 285 and to issue such a certificate only when there has been an adequate showing that the issuance will serve the "public interest." *Pacific Greyhound Lines v. Sun Valley Bus Lines,* 70 Ariz. 65, 216 P.2d 404 (1950).

Thus, the Commission in issuing the certificate of convenience and necessity is performing a judicial function, and when issuance is final, it is accorded *res judicata* effect, that is, that the issuance of the certificate is in the "public interest." *Pacific Greyhound Lines v. Sun Valley Bus Lines, supra; Arizona Corporation Commission v. Tucson Insurance and Bonding Agency,* 3 Ariz.App. 458, 415 P.2d 472 (1966).

At this point, it is clear that a holder of a certificate of convenience and necessity occupies the following legal position:

(1) That the service provided in the area certificated is in the public interest; and

(2) That as long as satisfactory service is supplied, it holds the exclusive right to supply the service.

However, as part and parcel of the regulatory authority of the Commission over public service corporations, A.R.S. § 40–252 provides, in part, that:

The Commission may at any time, upon notice to the corporation affected, and after opportunity to be heard as upon a complaint, rescind, alter or amend any order or decision made by it.

This appeal squarely puts in issue, given the rights of a certificate holder, what legal basis must exist before the Commission may exercise the authority granted by A.R.S. § 40–252 by deleting service areas from an existing certificate of convenience and necessity.

This issue appears to have been fully answered in *Application of Trico Electric Cooperative Inc.,* 92 Ariz. 373, 377 P.2d 309

(1962). In *Trico,* at issue was the validity of a Commission order which removed a portion of the area serviced by Trico and included that area in a certificate of convenience and necessity held by Tucson Gas & Electric. The Arizona Supreme Court framed the issue thusly:

> Whether this court will apply the principle of regulated monopoly in favor of Trico is now squarely presented for decision.

92 Ariz. at 384, 377 P.2d at 317. The Supreme Court resolved this issue by holding:

> We hold that the Corporation Commission was under a duty to Trico to protect it in the exclusive right to serve electricity in the region where it rendered service, under its certificate. The Commission was under [a] duty to prohibit a private utility under its jurisdiction from competing in that area, unless, after notice and an opportunity to be heard, it shall have been made to appear that Trico *failed or refused to render satisfactory and adequate service therein, at reasonable rates.*

92 Ariz. at 387, 377 P.2d at 319. (Emphasis added).

Pinnacle argues that the regulated monopoly premise upon which *Trico* was decided has been eroded by a subsequent Supreme Court decision in *Davis v. Corporation Commission,* 96 Ariz. 215, 393 P.2d 909 (1964), which substituted a "public interest" test to be applied in determining whether a certificate of convenience and necessity may be amended by the Commission. This argument is based upon the following language of *Davis:*

> Appellant misconceives the fundamental nature of the Certificate of Public Convenience and Necessity, and the implications of the theory of regulated monopoly which has been adopted in Arizona. The monopoly is tolerated only because it is to be subject to vigilant and continuous regulation by the Corporation Commission, and is subject to rescission, alteration or amendment at any time upon proper notice *when the public interest would be served by such action.*

96 Ariz. at 218, 393 P.2d at 911. (Emphasis added).

In our opinion, in order to determine what is the "public interest" referred to in *Davis,* it is necessary to place *Davis* in its proper factual context. *Davis* involved litigation to determine which entity would supply water to the Apache Junction area of Pinal County, Superstition Water Company or Davis Water Company. This issue was the subject of four Commission orders which transferred the disputed area back and forth between Davis and Superstition. Finally, the Commission determined that its previous orders which gave the area to Davis were based upon an erroneous conclusion and testimony. Specifically, the Commission found that Davis had not undertaken to supply water to the disputed area; that it lacked facilities to do so; and that Superstition could supply the area at lower rates to consumers.

It does not appear that Davis contested these findings, but rather contended that once an area was certificated, the Commission lacked authority to delete it and that the Commission was "estopped" to revoke its previous order. The Supreme Court properly rejected both arguments based upon A.R.S. § 40–252 and upon the well-founded principle that:

> While the Commission may not act arbitrarily, it has the same power to revoke a certificate as it has to issue it, upon due cause being shown. (Quoting from *Paradise v. Pennsylvania Public Utility Commission,* 184 Pa.Super 8, 17, 132 A.2d 754, 759 (1957).)

96 Ariz. at 219, 393 P.2d at 911.

However, the "public interest" that existed in *Davis* to delete the certificated area from Davis' certificate (inadequate service at unreasonable rates) is the same "public interest" referred to in *Trico* which protects the monopolistic character of a certificate of convenience and necessity as long as the certificate holder continues to "render satisfactory and adequate service therein, at reasonable rates."

Pinnacle also cites *Arizona Corporation Commission v. Arizona Water Company,* 111

Ariz. 74, 523 P.2d 505 (1974), for the proposition that the "public interest" should control whether certificates of convenience can be amended by deleting territory from a certificated area. In *Arizona Water Company,* the Commission deleted a portion of the area formerly held by the Arizona Water Company under its certificate. The Arizona Water Company appealed and the Arizona Supreme Court affirmed a trial court ruling that rescinded the Commission's order of deletion. In doing so, the Court noted that Arizona Water Company was ready, willing and able to supply water to the disputed area; that it had made substantial investments in anticipation of supplying the area; and that it appeared Arizona Water Company could supply water at a more reasonable rate than a competitor.

Thus the Arizona Supreme Court upheld the trial court's determination that the Corporation Commission lacked evidence:

> ... which would justify deleting the area in dispute from Arizona Water Company's certificate of convenience and necessity and that to delete the area from Arizona Water Company's certificate would cause a duplication of facilities and be costly and detrimental to water consumers in the area.

111 Ariz. at 77, 523 P.2d at 508.

The "public interest" spoken of in *Arizona Water Company* was the right of the certificate holder to supply the area as long as the service was satisfactory and the rate reasonable.

■ We therefore conclude from this review that the basic principles enunciated in *Trico* are still applicable in Arizona, that is, that in the first instance, it is in the "public interest" that a certificate holder enjoys a monopoly to supply the certificated service to the area designated by the certificate of convenience and necessity and that the public interest in maintaining that monopoly is overcome only upon a showing that the certificate holder is either unwilling or unable to provide the service or that the service provided would result in unreasonable charges to the consumer of the service.

In our opinion, the underlying rationale of the public interest in maintaining a monopoly is well illustrated in this case. Paul was willing, at a time when it was marginally economical to supply water to a sparsely populated area, to undertake that responsibility upon the expectation of a financially rewarding future need for its service. If a competitor, based upon "insider" information is able to upgrade its system and based solely upon that consideration, defeat Paul's reasonable expectations, future "Paul Water Companies" will not be willing to provide the service in the first instance, thus the public will suffer.

■ We therefore hold that absent an evidentiary showing that Paul was unable or unwilling to supply water to the subject property or that the rate for such service would be unreasonable, the Commission was without legal authority to delete the subject property from Paul's certificate of convenience and necessity.

■ We find that the Commission's conclusion that Paul's present system is "inadequate" does not completely answer the question. Rather, the issue was whether Paul could provide service to the area at a reasonable cost, not whether its present capacity is inadequate. This issue was simply not addressed by the Commission. We further find that the Commission's conclusion that it was not "convinced" Paul could supply the needed service at a reasonable cost is not supported by the evidence presented at the hearing.

Since we decide this issue on the merits, we do not reach the issue raised by Paul that it was denied due process under the notice given by the order to show cause issued in this matter.

The judgment of the trial court is reversed and the matter remanded with directions to the superior court to order the matter remanded to the Commission for further proceedings consistent with this opinion.

GRANT, J., and RICHARD M. DAVIS, Judge Pro Tem., concur.

NOTE: The Honorable Richard M. Davis, a Judge *pro tempore* of a court of record, has been authorized to participate in this matter by the Chief Justice of the Arizona Supreme Court, pursuant to Arizona Const. art. VI, § 20.